UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS SINGLETON,

        Petitioner,

v.                                   Case No.  8:07-cv-425-T-33EAJ

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## <u>ORDER</u>

This cause is before the Court on Petitioner Singleton's amended 28 U.S.C. § 2254 petition for writ of habeas corpus (Doc. No. 6) (hereinafter "Petition" or "petition"). Singleton challenges his convictions and sentences entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.  A review of the record demonstrates that the petition must be denied.

### Procedural History

On August 3, 2000, in case no. CF99-07467A-XX, Singleton pled nolo contendere to a charge of resisting an officer with violence and was sentenced to two

years probation. He did not appeal the sentence. Subsequently, Singleton violated his probation when he committed new offenses, as set out below.

On March 2, 2001, Singleton was charged in case no. CF01-01344A-XX with one count of attempted armed robbery and two counts of attempted felony murder. Based on these charges, on May 9, 2001, an affidavit alleging violation of probation was filed in case no. CF99-07467A-XX.

On August 27, 2002, Singleton pled nolo contendere to, and was adjudicated guilty of, the attempted armed robbery and attempted felony murder counts in case no. CF01-01344A-XX. The state trial court stayed and "withheld the imposition of sentence" as to these three counts, and placed Singleton on probation "for a period of 2 Yr. Comm. Control" followed by three years probation, "each count concurrent."

He also pled nolo contendere to violating his probation in case no. CF99-07467A-XX, and was adjudicated guilty. He was sentenced to two years community control with the sentence to run concurrently with the community control sentence in case no. CF01-01344A-XX. Singleton did not appeal his August 2002 judgments of conviction and sentences of community control.

Shortly thereafter, Singleton was charged with violating community control by failing to report to the probation office as instructed and by not "remaining confined" in his approved residence on several instances. On June 12, 2003, the state trial court held an evidentiary hearing on the violation charges. The state trial court found Singleton in willful and substantial violation of the community control requirements, and revoked Singleton's community control sentence. The state trial court sentenced

Singleton to twenty years incarceration on each count in case no. CF01-1344A-XX and to five years incarceration in case no. CF99-07467A-XX. The June 20, 2003, written sentences reflect that the prison terms ran concurrently.[1]

Singleton appealed the state trial court's decision that found him in willful and substantial violation of community control. Appellate counsel filed an *Anders* brief, and Singleton filed a pro se brief. Subsequently, on August 12, 2005, the state district court of appeal per curiam affirmed the state trial court's revocation ruling in consolidated case nos. 2D03-3273 and 2D03-4185. *Singleton v. State*, 908 So. 2d 1072 (Fla. 2d DCA 2005)[table].

During the pendency of his appeal, Singleton filed a pro se Rule 3.850 motion for postconviction relief that was denied on jurisdictional grounds. On January 18, 2006, Singleton refiled a pro se motion for postconviction relief, alleging six claims of ineffective assistance of counsel. On April 25, 2006, the state trial court summarily denied claims one, two, four, and five and directed the State to respond to claims three and six. Following the state's response, on May 31, 2006, the state trial court adopted the State's response and summarily denied the two remaining claims.

Singleton appealed the summary denial of his Rule 3.850 motion, and on December 8, 2006, the state district court of appeal per curiam affirmed the denial of relief in case no. 2D06-3068. *Singleton v. State*, 944 So. 2d 365 (Fla. 2nd DCA 2006)[table]. The mandate issued December 29, 2006.

_____

[1] Singleton filed a motion to mitigate sentence which the state trial court denied. Next, Singleton filed a pro se motion to correct illegal sentence under Rule 3.800(b), resulting in the state trial court's setting aside the sentence in count one of CF01-1344A-XX and resentencing Singleton to fifteen years incarceration (instead of twenty years) on the attempted armed robbery conviction.

Singleton is proceeding on his amended petition filed March 7, 2007 (Doc. No. 6), in which he raises the following grounds for relief:

## Ground One

Trial counsel was ineffective when he failed to make a timely objection to the state's lack of evidence.

At Petitioner's revocation hearing, counsel of record [sic] first omission or overt [sic] was counselor's failure to timely object to the lack of evidence to constitute a violation of probation. Counsel should have known by evidence that was preserved, that Petitioner herein did not violate any conditions deliberately or willfully. Petitioner submit [sic] that he did not violate the conditions of his probation willfully and substantially. Therefore, Petitioner [sic] counsel was ineffective at the revocation hearing when he failed to object to the lack of evidence.

## Ground Two

Failed to render effective assistance when counsel failed to object and argue hearsay admissibility presented by state and failed to preserve issue for appeal.

Failure to object to the findings of violation that were based solely on hearsay, and that it prejudiced Petitioner at revocation hearing, when the State showed that the Petitioner was placed on probation on the 27th of August 2002, and was violated on the 11th September 2002, which only amounted to two week. [sic] The admissibility presented should have been objected to and counsel at revocation hearing failed to so [sic] denied the right to effective assistance of counsel.

## Ground Three

Counsel was ineffective at revocation hearing when he failed to investigate and prepare a proper defense.

Counsel failed to investigate facts surrounding the case and waited until cross-examination to find out certain facts that could have helped Petitioner in his defense. Probation officer never called the doctor to verify that Petitioner never went, nor did Probation Officer contact me at the physicians. [sic] When it was clear that Petitioner had told the officer of such heart treatment he was obtaining Petitioner alleges that counsel [sic] failure to investigate denied him the right to a fair hearing.

Ground Four

Failing to advise the Petitioner of the consequences of accepting plea [sic] trial court failed to establish a federal basis for the acceptance of the plea.

Counsel failed to object and challenge the Court [sic] failure to establish a federal basis for the acceptance of the plea which resulted in a manifest injustice by not first filing [sic] it notice of intent prior to entry of plea and by counsel deficiency it prejudiced the Petitioner.

Ground Five

Defense counsel's poor advice was the cause of Petitioner's acceptance of plea.

Ground five was raise [sic] in same motion 3.850 as Grounds 1-4 was. Supporting facts: Counsel failed to communicate a plea offer. Petitioner would have accepted the plea offer but for the inadequate notice, and acceptance of the state's plea offer would have resulted in a lesser sentence.

Ground Six

Defense counsel was ineffective at revocation hearing when he failed to call an alibi witness.

Ground six was raise [sic] in same motion 3.850 as Grounds 1-5 was. Supporting facts: Counsel's deficient performance cause the Petitioner to be sentence to 20 years F.S.P. when in fact if counsel at revocation hearing would have called or investigated an alibi witness who could have provided exculpatory evidence constitutes ineffective assistance of counsel. The testimony of this witness would have placed the Petitioner at doctor's office, [sic] it would have provided facts as to why the Petitioner was not home and indeed was at the doctor's office.

**The Governing Legal Principles**

Because Petitioner filed his petition after April 24, 1996, this case is governed

by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v.*

*Campbell*, 353 F.3d 880, 889-90 (11th Cir.2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir.2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir.2005), *cert. denied*, 549 U.S. 819 (2006).

The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### Exhaustion of State Court Remedies and Procedural Default

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838,

842 (1999).  *See also, Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138.  "The

doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Singleton must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Singleton must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The

fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is

not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

<u>No Presumption that the State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman,* 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1)

whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly

prevail on the ground of ineffective assistance of counsel are few and far between."
*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

## DISCUSSION

### Grounds Four and Five

Singleton claims that counsel was ineffective for failing to advise him of the consequences of his 2002 nolo contendere plea. Singleton also claims that his counsel's poor advice was the cause of his accepting the 2002 plea.

Grounds four and five are procedurally barred because Singleton did not raise grounds four and five in a timely Rule 3.850 motion in state court. When he raised these grounds in his 2006 Rule 3.850 motion, the state trial court applied the two-year time limitation of Rule 3.850 as a procedural bar to each of the grounds. Because the state district court of appeal court affirmed the denial of Rule 3.850 relief per curiam without written opinion, the state trial court decision is presumed to rest on the procedural bars. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990)(where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by the last state court to rule on the question); *see also, Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)(rejecting contention that court could make an independent review of whether state had correctly applied its procedural default rule). The state procedural grounds on which the state decision rests are independent and adequate. *See Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.)(recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834, (1990).

Singleton did not show valid cause or prejudice to excuse his defaults, and any further cause or prejudice allegation is barred by the two-year time limit of Rule 3.850, as well as the state's successive petition doctrine. *See e.g., Foster v. State*, 614 So. 2d 455, 458 (Fla. 1992); *Zeigler v. State*, 632 So. 2d 48, 51 (Fla. 1993). Not showing cause, Singleton cannot avoid his default, as the cause and prejudice components are in the conjunctive and both must be established to escape the preclusive effect of the procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Nor does Singleton allege and meet the fundamental miscarriage of justice exception to lift the independent and adequate state bar applicable to grounds four and five. Singleton has no new and reliable claim of actual innocence not available at the time he entered his pleas.

Therefore, grounds four and five do not warrant habeas corpus relief.

**Ground One**

The thrust of ground one is that counsel at Singleton's violation proceeding was ineffective for failing to object timely to the lack of evidence showing Singleton willfully violated the conditions of his community control. This claim is essentially the same claim that Singleton raised as ground one in his Rule 3.850 motion:

> Counsel was ineffective when he failed to make a timely objection to the state's lack of evidence that constituted a violation of probation, and in doing so denied the defendant of [sic] the right to effective assistance of counsel, as guaranteed by the Sixth Amendment of the U.S. Constitution.

(Respondent's Exhibit 10, pp. 5-6).

<u>Standard of Proof for Probation/Community Control Revocation</u>

The standard of proof for probation/community control revocation proceedings is less stringent than the standard of proof for a criminal offense. In revocation proceedings, while a judge has broad discretionary power to revoke probation, *see Bernhardt v. State*, 288 So. 2d 490, 495 (Fla. 1974), the State has the burden of proving willful and substantial violations of conditions of supervision by a preponderance of the evidence. *Brown v. State*, 813 So. 2d 202, 203-204 (Fla. 2nd DCA 2002). The Florida courts did not overturn Singleton's revocation judgments on direct appeal or on collateral attack. Accordingly, Singleton is unable to show any deficiency in trial counsel's performance relative to the evidence supporting the state court's findings. Singleton was in willful and substantial violation of his community control under state law.

In his state Rule 3.850 motion, Singleton alleged that counsel's failure to raise a claim regarding the evidence at the revocation hearing resulted in a deprivation of his Sixth Amendment right to a fair trial; however, Singleton did not allege that his counsel was ineffective for failing to raise either a Fifth or Sixth Amendment claim regarding the revocation findings. Any such assertion would now be procedurally barred by the two-year limit of Rule 3.850 and the state's successive petition doctrine. If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring*, 42 F.3d 1350,

1355 (11th Cir.), *reh.'g denied*, 51 F.3d 1052 (11th Cir. 1995)(petitioner's ineffective assistance claim was not raised in state court and was procedurally barred).

Furthermore, Singleton cannot overcome the strong presumption that counsel's performance regarding the revocation findings and supporting evidence was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689-90.

<u>Due Process Clause Protections</u>

Consistent with the requirements of due process, the revocation of probation must be preceded by a final hearing in front of a neutral hearing body upon adequate written notice to the probationer. *See, e.g., Black v. Romano*, 471 U.S. 606, 611 (1985). The probationer (Singleton) must be given the opportunity to be heard in person, to present witnesses and documentary evidence on his behalf, and to confront adverse witnesses, unless the hearing body finds good cause for not allowing confrontation. *Id.* In addition, under certain circumstances a probationer is entitled to be represented by counsel during the revocation hearing. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Further, where the decision to revoke probation lies in the discretion of the court, the "probationer must be given the opportunity to show not only that he did not violate the conditions, but that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." *Black, supra*, 471 U.S. at 612.

Pursuant to the Due Process Clause of the Fourteenth Amendment, anyone accused of a crime can only be convicted if the State proves beyond a reasonable

doubt every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In the probation/community control revocation context, as in Singleton's case, the sufficiency of the evidence supporting the original convictions is not at issue. Accordingly, *Winship* and *Jackson* do not govern the underlying analysis. *See e.g., Williams v. Dretke*, 2006 U.S. Dist. LEXIS 11190 (D. Tex. 2006)(observing probation revocations are not subject to a reasonable-doubt standard)(unpublished).

A revocation of probation passes "constitutional muster" under the Fourteenth Amendment Due Process Clause as long as it is not "totally devoid" of evidentiary support. *Douglas v. Buder*, 412 U.S. 430, 432 (1973)(*per curiam*). Singleton did not raise a sufficient basis for this Court to conclude that his counsel overlooked a viable constitutional attack on the revocation evidence.

Singleton does not suggest there was inadequate notice and opportunity to defend the violation charges. Nor does he contend there were unforeseen constructions of state law to justify rescission of his community control, *cf. Douglas*, *supra*. Instead, Singleton faults his counsel for not objecting to the lack of evidence of his violation, asserting that he did not willfully and deliberately violate his supervision.

Singleton's testimony was not credited by the state trial court at the evidentiary hearing in the violation proceedings, and Singleton does not overcome the presumption

of correctness of the state trial court's factual findings in revoking his supervision. 28 U.S.C. § 2254(e)(1). Moreover, it is objectively reasonable to determine the revocation findings have sufficient evidentiary support, including probation officer Bianca's testimony as to Singleton's failure to report to the probation office and his absences from his residence despite instruction, including procedures on leaving his residence for valid medical purposes.

Even if counsel had raised federal constitutional claims attacking the evidence, there was no reasonable probability Singleton would not have been found in willful and substantial violation of the terms of supervision. Thus, whether his proposed claim of omission is viewed as a state law claim or one of constitutional dimension or both, the silent affirmance resulted in a reasonable application of *Strickland* under either prong, and a reasonable determination of the facts in light of the evidence.

Singleton has not shown that counsel was ineffective. The State presented adequate evidence of Singleton's violation. Counsel cannot be found ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002).[2]

Ground one does not warrant habeas corpus relief.

---

[2] Furthermore, under state law, ground one is procedurally barred because Singleton challenged the evidence supporting the revocation findings on direct review and he was foreclosed from restating that issue collaterally as a claim of ineffective assistance of counsel in his Rule 3.850 motion. In Florida, it is inappropriate to use a different argument to relitigate the same issue in a postconviction attack. *See Quince v. State*, 477 So.2d 535 (Fla. 1985), *cert. denied*, 475 U.S. 1132,(1986).

Singleton did not show valid cause in the state courts to excuse his default. Any allegation of cause or prejudice is now procedurally barred by the two-year limitation of Rule 3.850 and the state's successive petition doctrine. Singleton does not qualify for the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).

**Ground Two**

Singleton claims that his counsel was ineffective for failing to raise the claim that Singleton's revocation was based on inadmissible hearsay. The state trial court, in denying relief on his claim, concluded that Singleton did not show that counsel overlooked any meritorious objection.

What is or is not hearsay evidence in a state court trial is governed by state law. *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997). State courts are the ultimate expositors of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)(citations omitted). Where, as here, a state trial court's adjudication represents the resolution of an underlying state law issue, this Court owes a very high degree of deference to that determination. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *modified*, 731 F.2d 1486, *cert. denied*, 469 U.S. 956 (1984). It is not the province of a federal court to reexamine state trial court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because ground two is based on a claim of state law error, which the state trial court found *not* to be error, Singleton is unable to establish any deficiency in counsel's failure to raise the proposed state law arguments.

Even if Singleton could show that counsel's performance was deficient, Singleton is not entitled to relief because he cannot show prejudice. The state trial court found, in relevant part:

> Even if Counsel was deficient, the record clearly refutes that Defendant suffered any prejudice due to Counsel's failure to raise the objections. Specifically, Defendant asserts that Counsel should have made a hearsay objection when Officer Bianca testified that when he

arrived at Defendant's approved residence on September 2, 2002, Defendant was not home, and Defendant's mother told him that Defendant was at the Doctor's office. If anything, Bianca's testimony as to what Defendant's mother said helps Defendant's case in that it support's Defendant's assertion that he had a valid reason for not being at the approved residence on September 2, 2002. Defendant argues that Counsel should have objected to this testimony because, for reasons that are unclear to the Court, this testimony somehow indicated that Officer Bianca called the Doctor's office or inquired about Defendant's health on September 2, 2002, which in fact he did not. Giving Defendant benefit of the doubt that this argument even makes any sense, or the fact that Officer Bianca did not call the Doctor's office on September 2, 2002 had any significance to Defendant's case, Defendant still was not prejudiced. The Record clearly indicates that on cross-examination Counsel established that Officer Bianca had never contacted Defendant's physicians and that he never verified with them that Defendant had to go through various treatments and testing for his heart problems. Thus, Counsel raised the same issue on cross-examination that Defendant claims he should have raised in an objection.

The only other testimony that Defendant asserts Counsel should have objected to is Bianca's testimony that when he called Defendant's mother because Defendant had not come for his appointment yet, Defendant's mother said, "he's at the store and will be back in 10 minutes." Defendant argues that Counsel should have objected because this testimony somehow attacked Defendant's character. This argument fails for many reasons. Assuming that there even was some valid legal basis to object to the testimony Defendant mentions, Defendant was not prejudiced by Counsel's failure to make the objections. To the extent that Bianca's testimony painted Defendant in a negative light, Counsel attempted to rebut that on cross-examination by questioning Bianca if the "store" Defendant's mother referred to was in fact a drug store. Counsel further, through cross-examination, brought out the fact that there were numerous other times that Defendant did show up for appointments and was at the approved residence.

Defendant also argues that Counsel's failure to raise these objections somehow resulted in the Court not hearing the reason for why Defendant failed to appear — because his ride to the probation office fell through. First, the Court notes that the failure to appear charge was for September 10, 2002. The Defendant s excuse about his ride falling through to the probation office pertained to September 12, 2002. On September 12, 2002, Defendant was not required to go to the probation office, but apparently attempted to do so, but his ride fell through.

Defendant's failure to appear on September 12, 2002, was not a charge in his violation, so he was not prejudiced in any way, if the Court was not made aware of why he did not appear at the probation office on September 12, 2002. In any case, the Record indicates that on cross-examination, Counsel did bring out the fact that Defendant was attempting to go to the probation office on September 12, 2002, and that his ride fell through. This Court finds that Defendant was not prejudiced by Counsel's failure to raise hearsay objections, because any issues that Defendant contends should have been raised through an objection could not have been raised in an objection, and in any case, Counsel raised the same issues in cross-examination. . . . .

Respondent's Exhibit 11, pp. 2-4.

Singleton has not overcome, by clear and convincing evidence, the presumption of correctness of the state trial court's factual findings, § 2254(e)(1), in disposing of his claim based on the state record. In light of the state court's factual determinations, as well as the Florida court's underlying state law conclusions, which the second district court of appeal affirmed, it is objectively reasonable to conclude there was no reasonable probability of a different outcome had counsel objected on the grounds proposed.

In his Rule 3.850 motion, Singleton suggested, in conclusory fashion, that he was denied due process as a result of counsel's foregoing the proposed objections. He did not, however, allege that counsel was ineffective for failing to raise the claim that the state court evidentiary rulings violated his due process rights. Any such claim is now barred by the two-year limit of rule 3.850 and the state's successive petition doctrine.

Furthermore, state-court evidentiary rulings generally cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the

traditions and conscience of "our people as to be ranked as fundamental." *See Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (internal quotation omitted); *see also Spencer v. Texas,* 385 U.S. 554, 563-64 (1967). Singleton's case does not implicate such concerns.

Properly admitted testimony of the probation officer, as well as Singleton's own testimony (e.g., Respondent's Exhibit 1, V 2 R 186, 189), demonstrate that Singleton did not report to the probation office as required, and on more than one occasion, absented himself from his residence without complying with required procedures, in contravention of the terms of supervision on which he had been instructed. Singleton's excuses were for the state factfinder to resolve.

In view of the independent evidence which amply sufficed to show his violations were willful and substantial, it is objectively reasonable to conclude that admission of the testimony Singleton characterized as impermissible was not so fundamentally unfair as to violate his due process rights. Thus, there was no reasonable probability of a different outcome had counsel objected to the testimony on state law or constitutional grounds.

Ground two does not warrant habeas corpus relief.

### Ground Three

Singleton alleges that counsel was ineffective for failing to investigate and prepare a proper defense to the violation charges. The state trial court summarily denied this claim, adopting the State's response, which reads, in relevant part:

*1. The Court's record refutes the Defendant's third claim of error.*

In his third claim of error, the Defendant takes the position that Trial Counsel rendered ineffective assistance by failing to prepare what the Defendant believes would be a proper defense. *See Defendant's Motion* at 27. The Court's Record reveals otherwise, and reveals that the Defendant is attempting to mislead this Honorable Court, as he attempted to do from the witness stand at the revocation hearing.

Review of the Court's Record reveals that the Defendant received a term of 24 months Community Control on August 27, 2002 to be followed by three years of Probation. *See Affidavit of Violation of Community Control, State v. Singleton*, Case No. CF99-07467A-XX et. seq. (Fla. 10th Cir. Ct. Sep. 12, 2002)(*Affidavit*). The Defendant's general supervision conditions included condition (7), requiring him to comply with the supervising officer's instructions, and condition (12), to remain confined to the residence approved by the supervising officer. *See Judgment and Sentence. State v. Singleton*, Case No. CF99-07467A-XX et seq. (Fla. 10th Cir. Aug. 27, 2002). On September 12, 2002, Correctional Probation Senior Officer John Bianco, the supervising probation and parole officer, filed his report of violation. *See Affidavit.* Mr. Bianco alleged that the Defendant had violated Condition (7) by failing to report to the 10-6 Lakeland South probation office no later than 7:00 p.m. on Tuesday, September 10, 2002, after having been instructed previously to report in person to the office no later than each Tuesday. *See Affidavit.* Mr. Bianco further alleged that the Defendant failed to remain confined to his residence on Labor Day, September 2, 2002, and on two occasions on September 10, 2002. *See Affidavit.*

The Defendant now alleges that he "had an available defense" to the allegations. *See Defendant's Motion* at 28. He alleges that a "doctor and physician" that treated the Defendant could verify certain medical problems that the Defendant had, and that the Defendant was not home because he was at his physician's place of business. *See Defendant's Motion* at 28-30. But at the revocation hearing held on June 12, 2003, the Defendant himself testified. *See Transcript of Revocation Hearing, State v. Singleton*, Case No. CF99-07467A-XX et seq, at 41-63 (Fla. 10th. Cir. Ct. Jun. 12, 2003 (*Transcript*). The Defendant testified that Mr. Bianco gave him a special toll-free telephone number to call when he faced a medical emergency, to gain permission to leave his confinement. *See Transcript* at 43, lines 5-23. On September 2, 2002, a federal holiday (Labor Day), the Defendant admitted under oath that he left his residence without permission to visit his doctor's office. *See id.* at 44, line 1. The Defendant admitted that he did not use the special telephone number.

*See id.* at 43-44, lines 25,1. The Defendant "just took it upon [him]self" to leave without advising his Community Control Officer. *See id* at 44, line 11. The Defendant admitted further that his doctor's office was closed on that day. *See id.* at 44, line 12. The Defendant's mother testified that the Defendant's doctor's office was closed over the holidays, and the doctor had recently started that practice. *See id.* at 31, lines 9-10.

On September 10, 2002, the Defendant again left his residence. *See Affidavit.* When Trial Counsel questioned the Defendant regarding this, the Defendant explicitly denied having visited the doctor on September 10. *See Transcript* at 45, lines 6-13. Trial Counsel showed the Defendant an exhibit from the doctor's office, an excuse slip allegedly confirming a September 10 visit. *See id.* at 26, lines 7-25. This piece of paper had been submitted well prior to the revocation hearing as part of an earlier motion. *See id.* at 26, lines 11-12. It was placed in evidence as part of a large packet of medical records detailing the Defendant's medical problems. *See id.* at 25-27. Once the Defendant saw that piece of paper, he changed his testimony and claimed to have been at the doctor's office on September 10. *See id.* at 45, lines 20-22. But the Defendant also admitted leaving his residence on September 10 to go to a local store for his mother. *See id.* at 46, line, 7-13. The Defendant did not ask permission for this trip, and knew it was a violation of supervision conditions; still, he left because he did not believe that Mr. Bianco would report the violation. *See id.* at 46, lines 16-20. The Defendant's mother confirmed that the Defendant left the place of confinement at her request, and testified that it was a shopping trip, rather than a visit to a local physician as the Defendant later claimed. *See id.* at 19, lines 4-20. She tried to assume responsibility for the violation, claiming that the Defendant had mental problems. *See id.* at 19, lines 21-25. The Defendant admitted not submitting documentation of his medical visits, as he had been instructed to do, claiming that he did not realize he needed to. *See Transcript* at 49, lines 6- 10. He admitted not reporting on September 10, stating that he did not know he had to report in. *See id.* at 49, lines 17-18.

On cross-examination, the Defendant stated to Assistant State Attorney Donald Ratterree that he went to the doctor on September 9, as well as September 10. *See Transcript* at 51, line 25. Prior to cross-examination, the Defendant had not mentioned that date, nor had his mother. The Defendant could not account for the reason that he did not get a doctor's excuse slip on September 9. *See id.* at 52, lines 5,9,15. Mr. Ratterree then introduced into evidence, through Mr. Bianco on rebuttal, an excuse slip from the doctor's office for September 9, 2002.

*See id.* at 62, lines 22-25. Mr. Bianco had never seen the September 10 slip and it was not in the Department of Corrections file for the Defendant. *See id.* at 63, line 1. Mr. Ratterree presented testimony that a secretary working for the State had contacted the doctor's office and confirmed that the Defendant had only visited on September 9, and not September 10. *See id.* at 64, lines 24-25. Trial Counsel objected on hearsay grounds, and the Court overruled the objection. See *id.* at 65, lines 6-11. This Honorable Court held that the Defendant's alleged alibi document for September 10 showed "obvious tampering."

From even a general review of the transcript of the revocation hearing, it is clear that Trial Counsel presented an active defense, even submitting medical records to bolster the Defendant's claim. Now, the Defendant offers his speculation that had Trial Counsel presented the doctor's testimony to the Defendant's injuries, as well as the medical records, the Court would not have found him in violation of the supervision order. *See Defendant's Motion* at 27. But Trial Counsel's "duty to investigate does not force [him] to scour the globe on the off-chance something will turn up." *Rompella v. Beard*, 125 S. Ct. 2456, 2463 (2005). In the face of the Defendant's own admissions to the violations, the Defendant's conclusory allegations and speculations cannot support relief. Conclusory claims are by their very nature legally insufficient to sustain a petition for relief in a collateral matter. *See Bishop v State*, 537 So. 2d 836, 836-37 (Fla. 4th DCA 1988). No legal basis exists to support the Defendant's guesswork that his physician's testimony would have excused the fact that the doctor's office was closed on Labor Day 2002, the outright forgery of the September 10 excuse slip, his mother's confirmation of the unauthorized shopping trip on September 10, or the Defendant's own conflicting testimony as to whether or not he visited a doctor at all that day. Further, the Defendant is engaging in a hindsight argument, and that is something *Strickland* strictly forbids. *See Strickland*, 466 U. S. at 689. The Court's Record thoroughly refutes the Defendant's claim that Trial Counsel failed to "Investigate and prepare a proper defense." *Defendant's Motion* at 27. This Honorable Court may deny it without hearing. *See Kimbrough*, 886 So. 2d at 981. . . . .

(Respondent's. Exhibit 12)

By adopting the state's response to Singleton's Rule 3.850 motion, the state trial court implicitly made findings adverse to Singleton, who has not refuted the findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Moreover, Singleton has not shown that counsel, to be reasonably effective, was constitutionally compelled to contact the doctor with regard to Singleton's medical conditions. Testimony as to any of Singleton's medical problems would not have prevented the state trial court from finding that Singleton's absences from his home included unauthorized trips not based on a legitimate emergency.

There is "no absolute duty to investigate particular facts or a certain line of defenses." *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001) (noting that "a complete failure to investigate may constitute deficient performance of counsel in certain circumstances"). Rather than scrutinizing counsel's performance through the narrow lens of hindsight, the Court must consider "the sum total of [counsel's] efforts." *Id.* at 1240. Furthermore, there is not one "correct" way for counsel to provide effective assistance. *Alderman v. Terry*, 468 F.3d 775, 792 (11th Cir. 2006). For a petitioner to show deficient performance, he must establish that no competent counsel would have taken the action that his counsel took. The test is not what the best lawyers would have done or what most good lawyers would have done, but only whether some reasonable attorney could have acted in the circumstances as this attorney did. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Within the wide range of reasonable professional assistance, there is room for different strategies, no one of which is correct to the exclusion of all others. *See Felker v. Thomas*, 52 F.3d 907 (11th Cir. 1995).

Singleton's claim is based on speculation that counsel could have secured mercy for him based on his medical conditions. Singleton does not show that the state trial court would have been precluded from finding he was in violation of community

control restrictions even if additional testimony from the doctor had been introduced. It is objectively reasonable to conclude Singleton's assertions do not suffice to show, even if proven, there was any reasonable probability of a different outcome had counsel introduced the proposed testimony.

Ground three does not warrant habeas corpus relief.

## Ground Six

Singleton claims that his counsel at the violation proceeding was ineffective for failing to call a witness whom Singleton characterizes as an alibi witness. In summarily denying this claim, the state trial court adopted the state's response which reads, in pertinent part:

2. *The Defendant's sixth claim is legally insufficient to sustain relief* .

In his sixth claim of error, the Defendant claims that he had an "alibi witness" for the September 10, 2002 violations, in the form of a receptionist for his doctor. See Defendant's Motion at 39. The State assumes *arguendo* the veracity of this claim, even in the light of the Defendant's past misrepresentations to the Court, as is required in a postconviction proceeding. *See Kimbrough*, 886 So. 2d at 981.

To perfect a claim that Trial Counsel should have called an alibi witness, the Defendant is required to (1) set forth the witness's identity, (2) set forth the witness's testimony, (3) explain how the omission of this testimony resulted in prejudice, and (4) allege the witness's availability at the lower proceeding. *See Nelson v. State*, 879 So. 2d 579, 582, 584 (Fla. 2004)(*citing Odom v State*, 770 So. 2d 195,197 (Fla. 2d DCA 2000)). Here, the Defendant does not provide this witness's name. *See id.* at 39. He does claim that the witness would place him at the doctor's office on September 10, 2002. *See id.* He also alleges that she would have been available for the revocation hearing. *See id.* at 41. He claims prejudice in that the lack of this testimony prevented the Court from hearing that he was at the doctor's office as he claimed. See *id.* at 40. However, he does not explain how this would have excused his failure to remain confined on Labor Day, or his unauthorized shopping trip, also on September 10, both of which would stand alone as willful and

> substantial violations of supervision even if the Defendant's claim here
> is taken as truthful. Given this, the Defendant has not met *Nelson's*
> standard to require an evidentiary hearing, as he has not sufficiently
> identified the witness. Further, he has not shown the prejudice either
> *Nelson* or *Strickland* demands to afford him an evidentiary hearing as to
> the reasons for the witness's absence. *See Kimbrough*, 886 So. 2d at
> 981. . . . .

(Respondent's Exhibit 12)

As the State pointed out, Singleton's Rule 3.850 motion offered no specifics as to the identity of the purported "alibi" witness. It is objectively reasonable to reject a conclusory claim such as Singleton's which fails to allege sufficient facts which, if true, would meet *Strickland*'s deficiency prong. Singleton's speculation that an unnamed individual could provide an "alibi" for him on one of his absences from his residence does not suffice to overcome the strong presumption that counsel's decisions relative to potential defense witnesses were made in the exercise of reasonable professional judgment. *Strickland,* 466 U.S., at 690.

Because Singleton's allegations do not suffice to show no reasonably competent attorney could have foregone the proposed line of investigation, Singleton cannot show that counsel's performance was deficient. Furthermore, Singleton does not overcome § 2254(d)(1)'s presumption that the state trial court made implicit factual determinations in accepting and relying on the state's response to Singleton's Rule 3.850 motion.

Finally, Singleton does he set forth a sufficient basis to conclude there was any reasonable probability of a different outcome had counsel secured the proposed witness' presence and called her at the violation proceedings. Even accepting, arguendo, that an identifiable receptionist would have confirmed Singleton went to the

doctor's office on September 10, 2002, the state trial court was not precluded from finding Singleton's absence was not in accordance with required procedures for leaving his residence. Further, the testimony of the alleged alibi witness would not have excused his September 10, 2002 shopping trip, as the State pointed out at the evidentiary hearing.

Singleton does not show that the state trial court decision on his claim of ineffective assistance of counsel resulted in other than a reasonable application under *Strickland* under either prong, and a reasonable determination of the facts in light of the evidence. Finally, Singleton had full and fair opportunity to allege all his factual underpinnings, if any, for each claim in his Rule 3.850 motion. Singleton is now barred by 28 U.S.C.. § 2254(e)(2) from seeking an evidentiary hearing in this proceeding on any factual allegation not timely presented to the state courts. Failure to develop any such factual assertion in state court in support of his claims is due to Singleton's lack of diligence.

Ground six does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Singleton's petition is denied. The Clerk is directed to enter judgment against Singleton and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a

district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 16, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Nicholas Singleton